# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF OREGON

**ELIZABETH L. PERRIS**
BANKRUPTCY JUDGE

1001 S.W. FIFTH AVENUE, # 700
PORTLAND, OREGON 97204
(503) 326-1536

DIANE K. BRIDGE, LAW CLERK
MATTHEW MERTENS, LAW CLERK

June 10, 2014

Anthony Albertazzi
300 SW Columbia St, Ste 203
Bend, OR 97702

Katie Axtell
720 Olive Way #1201
Seattle, WA 98101

> Re: <u>Draper v. Fed. Home Loan Mortg. Corp.</u>, Adv. P. 13-3105-elp
>
> Supplemental Letter Ruling on Freddie Mac's April 7, 2014, Motion for Summary Judgment

Dear Counsel:

Freddie Mac Federal Home Loan Mortgage Corporation ("Freddie Mac") has moved for summary judgment (the "Motion")(docket #74) in the above-captioned proceeding. I denied the Motion at a May 14, 2014, hearing, except for Freddie Mac's argument that the <u>Merrill</u> doctrine shields Freddie Mac from liability, which I took under advisement. The purpose of this letter is to rule on the merits of Freddie Mac's <u>Merrill</u> doctrine argument. After reviewing the briefing and exhibits, for the reasons set forth below, I hold that the <u>Merrill</u> doctrine protects Freddie Mac from liability in this case on both the breach of contract and breach of covenant of good faith and fair dealing claims. For this reason, I will grant Freddie Mac's motion for summary judgment.

## FACTS

Construing the facts in the light most favorable to plaintiffs, the non-moving party, the following are the pertinent facts. Freddie Mac owns plaintiffs' home mortgage loan. Plaintiffs were experiencing financial difficulties when loan servicer Taylor, Bean, and Whitaker ("TB&W") made them an offer for forbearance on their home mortgage. Pls.' Resp. Def.'s Mot. Summ. J., Draper Decl. ¶4, ECF No. 88. Plaintiffs spoke with

1

Freddie Mac's representatives regarding a forbearance arrangement (the "Forbearance Agreement"), as well as TB&W's representatives, beginning in April 2008 and continuing thereafter. Id. Plaintiffs were led to believe that both Freddie Mac and TB&W were involved in the forbearance process and that both Freddie Mac and TB&W were working on plaintiffs' loan forbearance. Id.

Plaintiffs contacted Jennifer McGraw at Freddie Mac and obtained Freddie Mac's approval for plaintiffs' Forbearance Agreement. Draper Decl. ¶9. She provided plaintiffs with the Freddie Mac loan number for plaintiffs' mortgage, which was required to complete the Forbearance Agreement. Id. at ¶10. Plaintiffs subsequently contacted Ms. McGraw again for assistance with their forbearance. Id. Plaintiffs ultimately entered into an agreement that extended the forbearance period until September 2008. Pls.' Resp. Def.'s Mot. Summ. J., Ex. 7, p. 1, ECF No. 88. The Forbearance Agreement provided that past due payments would be reported to the credit bureaus if plaintiffs did not bring their account current or make other arrangements at the conclusion of the forbearance period. Def. Mem. Supp. Mot. Summ. J. 4., ECF No. 75. TB&W reported plaintiffs to the credit bureaus as delinquent on their mortgage prior to the conclusion of the forbearance period. Pls.'s Resp. Draper Decl. ¶5, ¶12. Plaintiffs were unable to get a clear payoff figure from either TB&W or Freddie Mac, including a breakdown of assessed late fees, after the conclusion of the forbearance period. Id. at ¶7.

When plaintiffs had issues with Ocwen Loan Servicing (the servicer for plaintiffs' loan prior to TB&W) attempting to foreclose plaintiffs' home during negotiations relating to a mortgage modification, Freddie Mac directed the servicer not to proceed with foreclosure. Pls.' Resp. Def.'s Mot. Summ. J., Ex. 2, ECF No. 88. Teresa Lloyd, the deponent for Freddie Mac, acknowledged in her deposition that Freddie Mac authorized TB&W's actions with respect to the Forbearance Agreement. Pls.' Resp. Ex. 6, 14:17-20. On cross-examination, she clarified that, to her knowledge, TB&W didn't do anything outside the bounds of the servicer guidelines in offering the Forbearance Agreement. Pls.' Resp. Def.'s Mot. Summ. J., Ex. 6, 17:12-17. Ms. Lloyd also explained that Freddie Mac had no input into the specific written terms of the Forbearance Agreement. Id. at 16:14-17. She testified that she had no knowledge of the terms of the Forbearance Agreement other than the length. Id. at 17:12-17.

Case 13-03105-elp    Doc 108    Filed 06/10/14

Anthony Albertazzi
Katie Axtell
Page 3
June 10, 2014

DISCUSSION

1. <u>Standard on a Motion for Summary Judgment</u>

A party is entitled to partial summary judgment on a claim or part of a claim "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Fed. R. Bankr. P. 7056. The facts and all reasonable inferences must be viewed in the light most favorable to the non-moving party. <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 255 (1986).

2. <u>Application of the Merrill doctrine in this case</u>

Freddie Mac argues that plaintiffs are barred from recovering from it for TB&W's actions. Under the <u>Merrill</u> doctrine, a federal government entity cannot be held responsible for the unauthorized acts of an agent. <u>Phaneuf v. Republic of Indon.</u>, 106 F.3d 302, 308 (9th Cir. 1997)(citing <u>Fed. Crop Ins. Corp. v. Merrill</u>, 332 U.S. 380, 384 (1947) "Anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority."). An agent must have actual authority to act, as opposed to just apparent or ostensible authority, before a government entity may be held liable as a principal. <u>Phaneuf</u>, 106 F.3d at 1034. Freddie Mac's purposes are sufficiently governmental to qualify the corporation for protection under the <u>Merrill</u> doctrine. <u>Mendrala v. Crown Mortg. Co.</u>, 955 F.2d 1132 (7th Cir. 1992).

    a. <u>Plaintiffs' argument that Merrill cannot be used because plaintiffs were not on notice of Freddie Mac's involvement</u>

I dispense quickly with plaintiffs' argument that the <u>Merill</u> doctrine cannot be used to shield Freddie Mac because plaintiffs did not know they were entering into an arrangement with Freddie Mac when they signed the promissory note underlying their mortgage. Based on their reading of <u>Merrill</u>, plaintiffs argue that "knowing that one is entering into an arrangement with the Government" is an implicit element that must be satisfied for the

3

Merrill doctrine to apply. Assuming, without deciding, that plaintiffs are correct, whether they knew that Freddie Mac owned the promissory note when they signed it is irrelevant. Plaintiffs are arguing that Freddie Mac, through the actions of TB&W, breached the terms of the Forbearance Agreement -- not the note. Because plaintiffs have alleged that they had to seek out Freddie Mac's approval for the Forbearance Agreement, they cannot claim that they did not know that Freddie Mac was involved.

    b.   Freddie Mac's Merrill doctrine argument

Freddie Mac argues that district courts in the Ninth Circuit have applied the Merrill doctrine as a bar to the liability of Fannie Mae and Freddie Mac for the unauthorized acts of their servicers. It first cites Cannon v. Wells Fargo Bank, N.A., in which the court dismissed all claims against Fannie Mae under the Merrill doctrine where plaintiffs failed to allege that Fannie Mae authorized Wells Fargo, the loan servicer, to engage in a kickback scheme, excessive insurance coverage, or backdating of policies. 917 F. Supp. 2d 1025, 1034-35 (N.D. Cal. 2013). Freddie Mac also cites Johnson v. Fed. Home Loan Mortg. Corp., in which the court applied the Merrill doctrine to bar claims against Freddie Mac on allegations that TB&W stopped paying insurance premiums in violation of a federal statute. C12-1712 TSZ, 2013 WL 2445367, at *4 (W.D. Wash. June 5, 2013).

Both Cannon and Johnson are factually distinguishable from this case. Plaintiffs in these two cases failed to allege in their complaints that Fannie Mae and Freddie Mac authorized the respective loan servicers to act in the complained-of manner. The courts in Cannon and Johnson granted motions to dismiss for this reason. By contrast, plaintiffs have adequately alleged in their Second Amended Complaint that Freddie Mac authorized TB&W's conduct with respect to the Forbearance Agreement. The question on summary judgment in this case, which was not present in the two cases cited, is whether plaintiffs have provided evidence that presents any genuine disputes of material fact regarding Freddie Mac's alleged authorization of TB&W's breaches.

Anthony Albertazzi
Katie Axtell
Page 5
June 10, 2014

I conclude that the answer is "no." Even when viewing the evidence in the light most favorable to plaintiffs, there is no evidence that Freddie Mac authorized TB&W to breach the Forbearance Agreement. Plaintiffs base their argument on two pieces of evidence: (1) Teresa Lloyd's deposition testimony that Freddie Mac authorized TB&W's actions with respect to the Forbearance Agreement; and (2) the declaration of plaintiff Barry Draper. I will address each in turn.

First, plaintiffs argue that Ms. Lloyd, Freddie Mac's own representative, stated in her deposition that Freddie Mac authorized TB&W's actions with respect to the Forbearance Agreement. Without any additional context, plaintiffs may be correct that this statement would be sufficient to defeat Freddie Mac's summary judgment motion. However, Ms. Lloyd clarified this statement on cross-examination. She explained that, to her knowledge, TB&W didn't do anything outside the bounds of the servicer guidelines in offering the Forbearance Agreement. Freddie Mac had no input into the specific written terms of the Forbearance Agreement. Aside from having no input, she further testified that, other than the length of the Forbearance Agreement, she did not even know what terms the agreement contained. In context, it is clear that, through the servicer guidelines, Freddie Mac authorized TB&W to offer the Forbearance Agreement. But there is no evidence that Freddie Mac's authorization of the Forbearance Agreement extended to authorizing TB&W's alleged breaches of the Forbearance Agreement.

Second, plaintiffs point to Barry Draper's declaration as evidence that Freddie Mac directed its loan servicers' conduct pertaining to plaintiffs' loan. As relevant to this question, Mr. Draper alleges the following: (1) Freddie Mac specifically directed a prior loan servicer to refrain from foreclosure proceedings on plaintiffs' home while the parties worked on a loan modification; (2) plaintiffs had to contact Freddie Mac to obtain approval to enter into the Forbearance Agreement with TB&W; (3) they were in regular contact with Jennifer McGraw at Freddie Mac when they had issues with their loan; and (4) they were led to believe that Freddie Mac and TB&W were both involved

5

with the forbearance process. It is true that this evidence suggests that Freddie Mac was directly involved with plaintiffs' loan and authorized TB&W to offer the Forbearance Agreement. However, Freddie Mac's direct involvement with plaintiffs' loan and its authorization of TB&W to offer the Forbearance Agreement are issues separate and apart from whether Freddie Mac authorized TB&W's alleged breaches. Mr. Draper's declaration does not create a dispute of material fact as to whether Freddie Mac authorized TB&W's alleged misconduct.

## CONCLUSION

Freddie Mac's Motion is GRANTED. This ruling disposes of plaintiffs' remaining claims for breach of contract and breach of the covenant of good faith and fair dealing. Ms. Axtell, please submit an order granting summary judgment and a proposed judgment within 10 days from the date of this letter.

Very truly yours,

*Elizabeth L Perris*

Elizabeth Perris
Bankruptcy Judge